IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SANDI HATHCOTE VAUGHN                                                                    PLAINTIFF

V.                                                                       CAUSE NO.: 1:09CV293-SA-JAD

CARLOCK NISSAN OF TUPELO, INC., et al.                                                 DEFENDANTS

MEMORANDUM OPINION

Defendants have filed three motions for partial summary judgment [139, 140, 141]. After reviewing the motions, responses, rules and authorities, the Court finds as follows:

*Factual and Procedural Background*

Plaintiff was hired by Defendant Carlock Nissan of Tupelo ("Carlock") to help salespersons contact potential customers and get them to come in or return to purchase a vehicle.[1] Plaintiff was paid $10.00 an hour, with the possibility of a $100 "birddog" fee, i.e. commission, for every customer that she got to come in and buy a car. The birddog fee was later reduced in March 2009 to $50.00 per car.

In September of 2008, Carlock stopped paying overtime compensation. There is a dispute as to whether Carlock told Plaintiff not to accumulate any overtime, or whether there was a company-wide policy that employees were not to work overtime hours. Plaintiff complained to Ann Elrod, Carlock's human resources and accounting manager, about not being paid overtime wages on September 16, 2008. Two days later, Plaintiff complained to then-general manager Jeff Adams. Plaintiff was paid the overtime wages about which she confronted Carlock.

---

[1] Plaintiff contends she was a "Customer Relations Manager," while Carlock maintains that Plaintiff was more of a telemarketer. Regardless of her job title, the basic duties attributable to her job are not at issue here.

On April 2, 2009, Plaintiff called the customer service hotline for Nissan corporate[2] regarding customer complaints she received about Carlock Nissan. Specifically, Plaintiff, calling under a fictitious name, claims she told Nissan corporate that Carlock instituted a "clean sweep" program under which customers paid a fee to help "repair" their credit; that Carlock represented that a vehicle had air conditioning and sold that vehicle to a customer even though the car did not have air conditioning; that Carlock fraudulently inserted into financial documents additional charges for such items as "gap insurance" and extended warranties that the customers did not want; that Carlock altered an interest rate; that a customer "traded-in" his automobile under the guise that Carlock would pay off amounts owed on his traded-in vehicle, but it was never paid off; and that Carlock sent out mailings concerning "prizes" that customers could win for coming to the dealership but never awarded those prizes or charged such processing fees as to make the "prize" invaluable. Later that month, seven employees allegedly engaging in those practices were terminated. Plaintiff then called Nissan corporate back to let them know they did not "get" everyone, and particularly referenced that Corbett Hill knew about the "clean sweep" scheme.

Plaintiff called Nissan corporate again on June 11, 2009, and identified herself as the one who had made the prior complaints against Carlock Nissan. On June 15, 2009, Corbett Hill found out Plaintiff made complaints regarding Carlock Nissan and terminated her. There is no dispute that Plaintiff making complaints about Carlock Nissan to Nissan corporate "factored into" her termination.

Plaintiff brought a claim against Carlock Nissan for violations of the Fair Labor Standards

---

[2]The terms "Nissan corporate" and "Nissan USA" are used interchangeably throughout this opinion to refer to the same entity.

Act, Mississippi's public policy exception to the employment at will doctrine, and tortious interference with employment relations against Corbett Hill. Defendant has filed three motions for partial summary judgment. Plaintiff responded and conceded her Title VII claims.

*Summary Judgment Standard*

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'…that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by…affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548. All legitimate factual inferences must be made in favor of the non-movant, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); however, the non-movant's burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548.

*Discussion and Analysis*

<u>*A. Fair Labor Standards Act Claims*</u>

The Fair Labor Standards Act of 1938 contains an anti-retaliation provision that forbids employers from discharging or in any other manner discriminating against an employee because such employee has filed a complaint or instituted or caused to be instituted a proceeding under or

3

related to the Act . . . . 29 U.S.C. § 215(a)(3). The statutory term "filed any complaint" as used in 29 U.S.C.S. § 215(a)(3) includes oral as well as written complaints within its scope. Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1329, 179 L. Ed. 2d 379 (March 22, 2011).

A claim of retaliatory discharge is analyzed under the same shifting burden test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998). The plaintiff has the burden of establishing a prima facie case of retaliation and must show: (1) participation in a protected activity; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. See Holt v. JTM Indus., Inc., 89 F.3d 1224, 1225-26 (5th Cir. 1996). Once the employee demonstrates a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the employee's rejection. McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. 1817. The employee then has the opportunity to rebut the employer's explanation and show that the reason given is pretextual. See id. at 804, 93 S. Ct. 1817.

Defendants concede that Plaintiff has satisfied the first two elements of her prima facie case, i.e., that she complained about her overtime wages being cut and she was ultimately terminated. However, Defendants argue that no causal connection between the protected activity and the adverse employment action has been shown. In particular, Defendants note that Plaintiff's complaints to Ann Elrod occurred in September of 2008, she was paid for those hours, and she was not terminated until June of 2009. Plaintiff responds that September of 2008 was when she "began" complaining about Carlock's failure to pay her overtime. However, Plaintiff has not alleged any specific dates or records of complaints regarding her overtime wages. Plaintiff did have a record that she

4

complained in September 2008 about Carlock's failure to pay her overtime, and it is undisputed that Carlock compensated her for those hours.

The Fifth Circuit has held that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997) (citing Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993)). "However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." Id.; see also Roberson v. Alltel Info. Servs., 373 F.3d 647, 656 (5th Cir. 2004) ("Without more than timing allegations, and based on [the employer's] legitimate, nondiscriminatory reason in this case, summary judgment in favor of [the defendant] was proper.").

Carlock contends Plaintiff was terminated because Plaintiff's position was no longer necessary for Carlock's operation in light of the economic downturn, Carlock desired to cut costs, and Plaintiff reported alleged wrongdoing by Carlock to Nissan USA. Carlock has presented a legitimate non-retaliatory reason for Plaintiff's adverse employment action.

Plaintiff has failed to establish a causal connection between her complaints about Carlock's failure to pay overtime and her eventual termination. Plaintiff admitted that her complaint about overtime was not mentioned in the termination meeting. Even if Plaintiff had sufficiently pled her prima facie burden, however, this claim could not survive the Court's inquiry into the pretext analysis.

Plaintiff seeks to extend a "mixed motives," "motivating factor" burden of proof into the FLSA as opposed to the recognized pretext burden. The Fifth Circuit has yet to extend the "motivating factor" burden of proof to FLSA retaliation claims. See Casey v. Livingston Parish

5

Communs. Dist., 2009 U.S. Dist. Lexis 4584, *13 (5th Cir. Mar. 6, 2009). Thus, this Court must analyze whether Plaintiff has shown that "but for" her complaints about overtime, she would not have been terminated. Pineda v. United Parcel Serv., Inc., 360 F.3d 483, 487 (5th Cir. 2004).

Plaintiff specifically testified in her deposition:

| | | |
|---|---|---|
| Q: | | Ms. Vaughn, are you claiming in this lawsuit that you were fired from Carlock Nissan as a result of making complaints concerning the overtime or the birddogs? |
| A: | | That wasn't discussed. That wasn't why I was told I was fired. |
| Q: | | Are you making a claim here that that's why you were fired? |
| A: | | No. |

Plaintiff has failed to rebut that the employer's stated reason for her adverse employment action was merely pretextual. Id. There is no evidence from which to find that Plaintiff's complaints regarding Carlock's failure to pay overtime wages was the cause of her termination.

Plaintiff has, however, presented a genuine issue of material fact as to whether she is owed overtime wages under the FLSA. Plaintiff attached her time cards maintained by Carlock Nissan to her Response to Summary Judgment. Those cards evidence that Plaintiff frequently worked over eight hours a day, five days a week, and occasionally worked on Saturdays as well. Her pay stubs do not indicate that she was paid all overtime due. Moreover, Plaintiff has submitted a chart of unpaid overtime owed her by Carlock Nissan, which Defendants have not contested. Therefore, Plaintiff has presented a genuine issue of material fact as to her overtime wages owed under the FLSA.

Plaintiff concedes that the reduction of her birddog bonuses is not an action covered by the FLSA. However, Plaintiff contends that the birddog reduction constitutes a state law breach of contract claim. Defendants seek to have this allegation stricken as an improper amendment of her

allegations to include a state law breach of contract claim. Plaintiff's complaint did not allege a breach of contract claim. Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff may only amend her pleading with either opposing party's written consent or the court's leave. Neither have been given. Thus, Plaintiff's assertion of a breach of contract claim is stricken.

    *B. McArn Claim*

Mississippi has adhered to the employment at will doctrine since 1858. Perry v. Sears, Roebuck & Co., 508 So. 2d 1086, 1088 (Miss. 1987). Under this common law rule, the employment contract between employer and employee may be terminated by either party with or without justification. HeartSouth, PLLC v. Boyd, 865 So. 2d 1095, 1108 (Miss. 2003) (citation omitted). In McArn v. Allied Bruce-Terminix Co., Inc., 626 So. 2d 603 (Miss. 1993), the Mississippi Supreme Court carved out a public policy exception to this general rule. In McArn, an employee claimed he was wrongfully discharged because he reported to customers and a state agency that the work being performed by the pest control company was inadequate or, in some cases, non-existent. Id. at 605-06. In seeking to have the Mississippi Supreme Court create a narrow public policy exception to the common law rule, McArn asserted that he was simply reporting conduct that was criminal under Mississippi law. Id. at 606 (citing Miss. Code Ann.§§ 97-19-39 and 69-23-19 (1972) (denoting as a felony the receipt of money under false pretense and as a misdemeanor the violation of state pest control regulations)). The Mississippi Supreme Court agreed with McArn, concluding that "an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." Id. at 607 (determining that the exception applies even where there is a "'privately made law' governing the employment relationship").

Here, Plaintiff claims she was terminated for reporting illegal criminal activity of Carlock

Nissan to Nissan corporate. Pursuant to the Fifth Circuit's decision in Wheeler v. BL Development Corporation, 415 F.3d 399, 402-04 (5th Cir. 2005), the plaintiff is required to prove that the conduct reported was actually criminal in nature. Thus, a good faith belief that the reported activity was illegal does not qualify for the protection of the McArn public policy exception. See Kyle v. Circus Circus Miss., Inc., 2011 U.S. App. Lexis 8834 (5th Cir. Apr. 28, 2011). To invoke the McArn exception, Plaintiff must demonstrate that the activities she complained of constituted criminal activity with "substantial evidence or citation to binding statutory and/or case law." Id. at *14.

(i) Uttering a Forgery

Plaintiff alleges that she reported to Nissan USA two instances of uttering a forgery committed by Carlock Nissan: (1) Carlock employees altered financial documents executed with sales so as to fraudulently charge customers for items which they had not agreed to purchase, including charges for insurance and extended warranties; and (2) Carlock employees fraudulently changed the interest rate to a much higher rate than had been agreed upon at the time of the sale.

The elements of "uttering a counterfeit instrument or coin" pursuant to Mississippi Code Section 97-21-59 are: (1) that the defendant published or uttered as true (2) a forged, altered, or counterfeit instrument (3) knowing the instrument to be forged, altered, or counterfeited, (4) with the intent to defraud.

Plaintiff has failed to provide substantial evidence that Carlock could be held criminally liable for its alleged actions. First, there is no evidence of a forged, altered, or counterfeit instrument. All the Court has in front of it now is Plaintiff's unsubstantiated assertion that documents were altered without consent of the customer. Second, Plaintiff has failed to put forth any evidence that the Carlock employees had the requisite knowledge of forgery or intent to defraud the customer. Plaintiff generally cites that employees of Carlock Nissan included charges for

insurance and extended warranties that were not requested by customers, and that, according to customers, employees transcribed the wrong interest rates on documentation. There is no proof that these instances were any thing other than human error or negligence. Accordingly, Plaintiff's claim that she was terminated for reporting that Carlock "uttered a forgery" are dismissed.

(ii) Fraud by Mail

Plaintiff contends she reported to Nissan USA that Carlock distributed advertisements through the United States mail that made false statements concerning "prizes" which customers could win. Plaintiff claims that no prizes were ever given, or if they were, they were small prizes for which Carlock charged processing fees exceeding the prize's value.

Plaintiff asserts these actions violate Mississippi Code Section 97-19-83 which makes it a crime for one to use the United States mail to "devise a scheme to defraud . . . for securing business or personal advantage by means of false or fraudulent pretenses, representations, [or] promises . . . ." Carlock contends that prizes were awarded, and one of the keys that they sent out by United States mail did, in fact, fit the car Carlock advertised it would give away. Carlock can not, however, guarantee that the person who received the "winning" key would appear to claim his prize. Therefore, Plaintiff has failed to show that these practices constitute illegal conduct sufficient to survive summary judgment.

(iii) False Pretense

The majority of Plaintiff's allegations that she was terminated in violation of public policy centers around her contention that Carlock's "Clean Sweep" program constituted false pretenses. According to Plaintiff, Carlock engaged in a "Clean Sweep" credit repair program in which, for a fee of $400 to $800, and a vehicle sale with a "sponsor," Carlock ensured the purchaser their credit score would be "repaired." After a period of four to six months, Carlock promised to relieve the

9

"sponsor" of its obligations and lower the interest rate of the car note. Plaintiff contends that the customers' credit scores were not repaired as a result of the money paid. She also claims her report regarding the sale of a vehicle represented to have air conditioning which did not have air conditioning, and the incident in which Carlock falsely represented to a customer that it would pay off the traded-in vehicle amount to criminal violations of the false pretenses statute.

Mississippi Code Section 97-19-39 provides that "[e]very person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing . . ." shall be guilty of a misdemeanor or felony depending on the value of the thing obtained. Mississippi case law requires that, "before the factual representation becomes criminal, it must relate to present or past fact, thus excluding a representation such as . . . a promise to repay money in the future." State of Miss. v. Allen, 505 So. 2d 1024, 1025 (Miss. 1987). Thus, where an indictment charged no factual representation regarding present or past fact, it charged no crime. Id.

Defendants contend that Plaintiff's allegations regarding the "Clean Sweep" program and the misrepresentation regarding paying off the traded-in vehicle constitute a future promise which does not amount to a "false pretense" under the statute. Indeed, under the "Clean Sweep" program, Carlock accepted money from customers on Carlock's assurance that their credit would be repaired in the future. Hence, the "sponsor" was necessary to co-sign for the car loan. If Carlock's obligation to repair the customer's credit was not a future promise, there would be no need for such sponsor; the customer would qualify for the lower interest rate at that moment. However, under the program, Plaintiff admits that once the "registration" fee of $400 to $800 was paid, the "sponsors" were indebted to Carlock until three or four months later when the sponsor was excused from

obligation.  Likewise, Carlock's representation that the traded-in vehicle would be paid off is a promise of future conduct which is not contemplated by the false pretense statute.  Accordingly, Carlock is not criminally liable for false pretenses for these two incidences as claimed by Plaintiff.

As to the claim of Plaintiff that a customer bought a vehicle advertised to come with air conditioning, only to find out later that the vehicle did not have air conditioning was false pretenses on the part of Defendant, Plaintiff has failed to show any intent to defraud.  Indeed, Carlock admitted that it was human error to check the box indicating that air conditioning was included and noted that the dealership was aware of that mistake and had taken steps to fix it.  Plaintiff has failed to show that Carlock had the criminal intent to defraud.  Thus, Plaintiff's allegations that she was terminated for reporting Carlock's false pretenses fails as Plaintiff has not shown that she was attempting to report a "criminal activity."

### C.  Tortious Interference with Employment Relations by Corbett Hill

Plaintiff contends that Defendant Corbett Hill is liable for the Mississippi tort of malicious interference with employment relations.  Mississippi law allows for recovery against those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury. Morrison v. State Enter. for Tech., Inc., 798 So. 2d 567, 574 (Miss. Ct. App. 2001) (citing Shaw v. Burchfield, 481 So. 2d 247, 254-55 (Miss. 1985)). Tortious interference even with at-will employment can be the basis of a claim. Levens v. Campbell, 733 So. 2d 753 (Miss. 1999).  However, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and *absent bad faith*, to interfere with his principal's contractual relationship with a third person." Shaw, 481 So. 2d at 255 (emphasis added).

11

Plaintiff alleges that Corbett Hill acted in bad faith in terminating her employment because she reported to Nissan USA that he knew of the "illegal activity" going on at the dealership, and he knew she complained about him to the corporate headquarters. It is uncontested that Corbett Hill maintained a position of responsibility over Plaintiff. On the day she was terminated, Carlock Nissan and Hill received a log from Nissan corporate identifying Plaintiff's name and complaints called in to Nissan corporate. It is undisputed that Hill possessed the complaint made by Plaintiff to Nissan USA when he terminated her. Moreover, Hill acknowledged that one of the reasons he terminated Plaintiff was because she made complaints to Nissan corporate without speaking to him about her concerns first. Carlock further admitted to the Mississippi Department of Employment Security that Plaintiff was terminated because she "wrote a bad letter of complaint about employer." Plaintiff was awarded unemployment benefits on that basis.

A review of the log sent to Carlock and Hill from Nissan corporate evidences no mention of Corbett Hill's name or title as a basis for Plaintiff's complaints.[3] Plaintiff has failed to produce evidence, other than her conclusory allegations, that Hill had knowledge that she named him in her complaints to Nissan corporate. There is no evidence of malice in Defendant Corbett Hill's actions in terminating Plaintiff; thus, Plaintiff has failed to submit proof on an element of her claim against that defendant. See Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548. Plaintiff's claim for tortious interference with employment relations against Corbett Hill is DISMISSED.

*Conclusion*

Defendants' Motion for Partial Summary Judgment [139] is GRANTED as to Plaintiff's retaliation cause of action, but DENIED as to her overtime wages claim. Defendants' Motion for

---

[3] The complaint log under Sandra Vaughn's name did identify Ann Elrod as being complicit in the alleged illegal activity.

Partial Summary Judgment [140] is GRANTED as to Plaintiff's Title VII claims. Defendants' Motion for Partial Summary Judgment [141] is likewise GRANTED as to Plaintiff's claim she was terminated in violation of the public policy exception to Mississippi's employment at will doctrine, and Plaintiff's tortious interference with employment relations against Corbett Hill, individually.

SO ORDERED, this the 18th day of August, 2011.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**